IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCO VERCH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:19-cv-01457-S |
| | § | |
| WHITE ROCK SECURITY GROUP, LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a Motion for Default Judgment filed by Plaintiff Marco Verch (ECF No. 11). For the following reasons, the District Court should GRANT Verch's Motion and enter a default judgment against Defendant White Rock Security Group, LLC (White Rock), consistent with these Findings, Conclusions, and Recommendation.

## Background

On June 19, 2019, Verch filed his original Complaint in this civil action alleging White Rock infringed his copyright in violation of §§ 106 and 501 of the Copyright Act and altered and/or removed from his work copyright management information (CMI) in violation of § 1202(b) of the Digital Millennium Copyright Act (DMCA). Compl. 1, ¶ 1 (ECF No. 1).

1

Verch alleges that he photographed a series of lettered tiles spelling "ransom ware" (the Photograph) and published the Photograph on his Flickr page with a "gutter credit" under the Photograph reading "Marco Verch." *Id.* 2, ¶¶ 7-8; Compl. Ex. A (ECF No. 1-1). He further alleges that the Photograph was registered with the United States Copyright Office and was assigned the Copyright Registration Number VA 2-095-196. Compl. 2, ¶¶ 9-10. According to Verch, White Rock published an article on its website, entitled *Why Back Ups Matter So Much in a Ransomware Attack*. *See* Compl. Ex. C (ECF No. 1-3). This article featured the Photograph, and White Rock neither licensed the Photograph from Verch, nor obtained Verch's permission to publish the Photograph online. Compl. 3, ¶ 11-12.

Verch contends that White Rock's conduct violates §§ 106 and 501 of the Copyright Act and § 1202(b) of the DMCA. *Id.* 3, 4 ¶¶ 15, 21. As a result of White Rock's conduct, Verch asserts that he is entitled to: (1) $3,000.00 in actual damages under 17 U.S.C. § 504(b); (2) $10,000.00 in statutory damages under 17 U.S.C. § 1203(c)(3)(B); and (3) $2,975.00 in attorney's fees and $440.00 in costs under 17 U.S.C. § 505. Mot. 1; *see also* Compl. 5-6, ¶¶ 3-4, 6 (asking for "actual damages" in an unspecified amount attributable to White Rock's infringement, "statutory damages of at least $2,500.00 an up to $25,000.00 for each instance of false copyright management information," and "costs, expenses, and attorneys' fees").

On July 15, 2019, Verch properly served White Rock by delivering summons and a copy of the complaint to White Rock's registered agent. Return of Service

(ECF No. 8). The summons instructed White Rock to serve an answer to the Complaint on Verch's attorney within 21 days after the date of service. Summons (ECF No. 5). The summons warned that if White Rock failed to comply, default judgment would be entered against it, entitling Verch to the relief demanded in the Complaint. *Id.* White Rock failed to comply with the summons's directives or otherwise indicate its intent to defend the action within the time required by law.

The Clerk entered default against White Rock on November 27, 2019. Entry of Default (ECF No. 13). Thereafter, Verch filed the Motion for Default Judgment. White Rock failed to respond, and the Motion is now ripe for determination.

**Legal Standards and Analysis**

<u>I. Motion for Default Judgment</u>

Rule 55 governs applications for default and default judgment. Fed. R. Civ. P. 55. Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure. *Id.* The Clerk will enter a default when the party's default is established by an affidavit or otherwise. *Id.* (citing Fed. R. Civ. P. 55(a)). After the entry of default, a plaintiff may apply to the court for a default judgment. *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir.

1989). However, it is a remedy generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (4th ed.)). To determine whether to enter default judgment, a court should examine: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (2d ed. 1983)).

After considering the Complaint, the Motion for Default Judgment, the materials supporting the Motion, and the applicable law, including the *Lindsey* factors, the Court recommends entering default judgment against White Rock. Here, there are no material issues of fact; rather, because of White Rock's default, the Court takes as true the facts as Verch alleges them. *See Nishimatsu Constr.*, 515 F.2d at 1206; *see also Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017). Additionally, there is no substantial prejudice against White Rock. It was properly served, the grounds for default against it were clearly established, and the Clerk properly entered default against it. There is nothing before the Court indicating that White Rock's failure to appear was a good-faith mistake or the result of excusable neglect. Entering default

judgment against a defendant, who has taken no action to respond to a suit, is not "harsh." *See Joe Hand*, 2017 WL 373478, at *2 (citing *Lindsey*, 161 F.3d at 893). And White Rock has had over a year to respond to Verch's Complaint, which mitigates the harshness of a default judgment. *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013).

The pleadings also sufficiently support a default judgment, and damages can be calculated with reasonable certainty without a hearing. Verch alleges copyright infringement and a DMCA violation. To succeed on a claim of copyright infringement, a claimant must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A claimant meets the first element, copyright ownership, by proving originality, copyrightability, and compliance with the applicable statutory requirements. *See id*. A claimant meets the second element by proving actionable copying and substantial similarity between the copyrighted work and the allegedly infringing work. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). The copyrighted work and the allegedly infringing work are substantially similar if "a layman would view [them] as substantially similar" on "side-by-side comparison." *Id*. (internal quotation marks and citation omitted).

Verch's Complaint sufficiently establishes the necessary elements of his copyright infringement claim against White Rock. As to the first element, Verch's registration of the Photograph with the United States Copyright Office is *prima*

*facie* evidence of ownership and validity. *See John Perez*, 2013 WL 1828671, at *4; Compl. 2, ¶ 10. White Rock has done nothing to rebut this evidence. Verch's work also meets the originality requirement, as Verch himself created the Photograph, and it possesses at least some minimal degree of creativity. *John Perez*, 2013 WL 1828671, at *4; Compl. 2, ¶ 7. As to the second element, Verch alleges that White Rock used an exact, full copy of the Photograph on its website without authorization. Compl. 3, ¶ 11-12. In support of his Complaint, Verch provided a copy of the Photograph, a screenshot of the Photograph as it was displayed on his Flickr page, and a screenshot of White Rock's website displaying the allegedly infringing image. As mentioned above, the Photograph depicts lettered tiles spelling "ransom ware" against a white background. *See* Compl. Ex. A. White Rock's website features a graphic that is identical to the Photograph. *Compare* Compl. Ex. A (the Photograph), *and* Compl. Ex. B (ECF No. 1-2) (Flickr page), *with* Compl. Ex. C (White Rock's website). On side-by-side comparison, a layman would find the Photograph and the allegedly infringing image more than substantially similar. Therefore, the Complaint and supporting materials sufficiently allege the necessary elements of Verch's copyright infringement claim against White Rock. And, due to White Rock's default posture, the Court accepts those allegations as true.

To succeed on a DMCA claim a claimant must prove that a person "intentionally remove[d] or alter[ed]" any CMI from a work. 17 U.S.C. § 1202(b)(1). CMI is information "conveyed in connection with copies . . . of a work . . . including

in digital form," and can include the name of the author, and other identifying information about the work. *Id.* § 1202(c), (c)(2). Verch alleges that the Photograph was displayed on his Flickr page with a gutter credit beneath it reading "Marco Verch." Compl. 4, ¶ 19; *see also Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (finding that a work's author's "name appear[ing] in a printed gutter credit near the Image" constituted CMI under § 1202); *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 137 (E.D.N.Y. 2019) ("Few courts have meaningfully interpreted § 1202(c), but most courts that have considered the issue have found that the meaning of CMI is broad and, at least in some circumstances, includes watermarks." (collecting cases)). According to Verch, White Rock placed the Photograph on its website without this gutter credit, intentionally, knowingly, and without Verch's consent or knowledge. Compl. 4, ¶¶ 20, 22. Therefore, the Complaint sufficiently establishes the necessary elements of Verch's DMCA claim against White Rock.

Generally, in the default-judgment context, unliquidated damages are not awarded without an evidentiary hearing. Fed. R. Civ. P. 55(b)(2)(B); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). However, the Rules do not require an evidentiary hearing, and the Court has broad discretion to forego an evidentiary hearing where there is sufficient evidence to render a decision without one. *See James*, 6 F.3d at 310; *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam) (citations omitted) (holding that in the default judgment context, damages may "be entered without a hearing" if "the amount claimed is a

liquidated sum or one capable of mathematical calculation"). Here, Verch's damages can be assessed without a hearing.

Verch seeks $3,000.00 in actual damages for White Rock's infringement. However, the Court concludes that Verch is entitled to $1,500.00 in actual damages. A claimant may recover actual damages resulting from the infringement and any profits of the infringer that are attributable to the infringement. 17 U.S.C. § 504(b). A court may calculate actual damages by measuring the "market value of the fee the owner was entitled to charge for [the infringer's] use" of his copyrighted work. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001). Verch estimates that he would have been entitled to charge White Rock a licensing fee of up to $1,500.00 to use the Photograph in the manner that it did. Decl. 3, ¶ 16 (ECF No. 12).

To recover the infringer's profits as actual damages, however, a plaintiff is required to prove at least the infringer's gross revenues. 17 U.S.C. § 504(b); *see also Wondie v. Mekuria*, 742 F. Supp. 2d 118, 125 (D.D.C. 2010) (finding an award of statutory damages "more appropriate" given "the difficulty of computing actual damages" in a default judgment and plaintiff's failure to provide the court with information regarding the defendant's sales, revenues, or profits from the sale of the infringing works). Verch concedes that "it is unknown what profits Defendant generated from exploitation of the Photograph" but asserts that any inferences should be "broadly construed" in his favor and that the Court should "err on the side of guaranteeing the plaintiff a full recovery." Decl. 3-4, ¶ 17.  But Verch has

8

provided no information regarding White Rock's revenues, much less *proved* that White Rock profited from the use of the Photograph. Because Verch has not presented any proof of profits, even though White Rock has defaulted, the Court cannot award actual damages for profits. Thus, while Verch alleges that he is entitled to $3,000.00 in actual damages under 17 U.S.C. § 504(b), he has only established his entitlement to actual damages of $1,500.00—his estimated lost licensing fee.

Verch also asks for $10,000.00 in statutory damages for White Rock's removal of CMI from the Photograph. However, the Court finds that $5,000.00 in statutory damages under the DMCA is more appropriate. Claimants under the DMCA can elect to recover either their actual damages and the defendant's profits or statutory damages. *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 276 (5th Cir. 2020). The DMCA provides that courts may award between $2,500.00 and $25,000.00 in statutory damages for each violation of § 1202. 17 U.S.C. § 1203(c)(3)(B). "As relief for violations of the DMCA, the award of statutory damages is especially fitting in the default judgment context where [p]laintiffs are without the benefit of any disclosure by the infringer, leaving damages uncertain." *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *16 (E.D.N.Y. Aug. 26, 2016) (internal quotations and citations omitted), *adopted by* 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016).

Verch has not provided any support, case law, or otherwise, for the $10,000.00 figure other than copies of default judgments from the Southern

District of New York that award $10,000.00 in statutory damages for removal of CMI. *See* Decl. Ex. A (ECF No. 12-1). Verch has not explained why the judgments he provides are appropriate comparisons for this case; indeed, factually similar cases (including from this district) tend to award far less for similar, and more severe, violations. *See, e.g.*, *Crenshaw Media Grp. LLC v. Davis*, 2018 WL 3496473, at *2 (N.D. Tex. July 20, 2018) (awarding statutory damages of $2,500.00 per violation where defendant pirated works associated with plaintiff's podcast, *Sasquatch Chronicles*, 243 separate times); *RBH Energy, LLC v. Partners in Church Consulting, LLC*, 2016 WL 6496362, at *1 (N.D. Tex. May 6, 2016) (awarding statutory damages of $5,000.00 where defendant removed plaintiff's CMI and substituted it for its own "attempt[ing] to conceal its infringement"); *but see John Perez*, 2013 WL 1828671, at *4 (awarding default judgment for willful DMCA violation and $10,000.00 in statutory damages). *See also Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019) (awarding statutory damages of $5,000.00 where defendant knowingly altered the gutter credit); *Sadowski v. Shivley*, 2019 WL 5589077, at *1, *4 (D. Or. Oct. 30, 2019) (awarding statutory damages of $5,000.00 where defendant removed plaintiff's attribution from the corner of image); *Reilly v. Commerce*, 2016 WL 6837895, at *5, *12 (S.D.N.Y. Oct. 31, 2016) (awarding statutory damages of $5,000.00 per violation by default judgment when defendant cropped a watermark from the corner of the image); *Kennedy v. Creditgo, LLC*, 2016 WL 492757, at *4 (D.N.J. Feb. 8, 2016) (awarding statutory damages of $5,000.00 in a default judgment as

"reasonable and just" considering "the dual purposes of statutory damages to compensate and deter"). From this survey, the Court concludes that $5,000.00 is reasonable and sufficient to both compensate Verch and to deter future violations of the DMCA.

## II. Request for Attorney's Fees

Verch also contends that he is entitled to $2,975.00 in attorney's fees and $440.00 in costs under 17 U.S.C. § 505. Mot. 1. In a civil action for copyright infringement, "the court in its discretion may allow the recovery of full costs . . . [and] reasonable attorney's fees to the prevailing party[.]" *RMC Publ'ns, Inc. v. Doulos PM Training*, 2010 WL 742575, *4 (N.D. Tex. Mar. 3, 2010) (quoting 17 U.S.C. § 505). The Supreme Court has stated that the language of § 505 does not provide a "precise rule or formula for making the[ ] determination" of whether to award fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994). It does, however, grant district courts "wide latitude to award attorney's fees based on the totality of circumstances in a case." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). Some non-exclusive factors to consider in awarding attorney's fees under § 505 include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence." *Fogerty*, 510 U.S. at 533. Once entitlement to fees is established, determining the amount of a fee award is a two-step process: first, the Court calculates the lodestar, which is the number of hours reasonably expended multiplied by the prevailing

hourly rate in the community for similar work, excluding all time that is excessive, duplicative, or inadequately documented. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012); *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993). Once the lodestar amount is calculated, the Court may adjust it based on the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).[1]

Verch is entitled to his attorney's fees and costs incurred to defend his legal rights against White Rock's infringement. The Court finds that Verch's suit was not frivolous, and Verch's motivation in bringing the suit—defending his original work—promotes one of the dual purposes of the Copyright Act. *See Kirtsaeng*, 136 S. Ct. at 1986 (noting that the Copyright Act "strik[es] a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that framework"). As White Rock did not defend this suit, it did not advance a reasonable defense. And, awarding fees in this case will both compensate Verch for White Rock's infringement and serve as a deterrent for

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

future infringement.

Verch is entitled to fees and costs in the amount he requests. In support of his request for attorney's fees and costs, Verch provided the declaration of Richard Liebowitz, who represented him in this matter. In his declaration, Mr. Leibowitz states that his rate is $425.00 per hour, and it appears that Mr. Liebowitz expended 7.0 total hours in this matter, for a fee total of $2,975.00. Decl. 6, ¶ 23. Mr. Liebowitz's declaration also incorporates a table itemizing the various tasks he performed in this matter, with details regarding the specific work performed, the charges for that time, and costs incurred in bringing this suit—which equal $440.00. The Court finds that $425.00 per hour is a reasonable rate in this community for an attorney of Mr. Liebowitz's skill and experience in bringing a copyright case. *Spear Mktg., Inc. v. Banscorpsouth Bank*, 2016 WL 193586, at *9-10 (N.D. Tex. Jan. 14, 2016) (finding a reasonable hourly rate for copyright litigation in the Dallas area was between $150.00 and $400.00 per hour, and noting that rates above $500.00 per hour are reserved for complex cases that few attorneys can handle); *SortiumUSA, LLC v. Hunger*, 2015 WL 179025, at *5-7 (N.D. Tex. Jan. 14, 2015) (awarding attorney's fees at rates of $325 and $202.50 per hour in a copyright case).

The Court further finds that the declaration, including the statement of the fees and costs, establish that the hours expended in this matter are reasonable under the circumstances of the case and that Verch's requested fee amount—$2,975.00—is the appropriate lodestar. *See Primrose Operating Co v. Nat'l Am.*

*Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]").

Although there is a strong presumption that the lodestar figure is reasonable, the Court must consider whether the lodestar should be adjusted upward or downward based on the twelve *Johnson* factors. The Court, however, is not required to "recite or even mention the *Johnson* factors, so long as 'the record clearly indicates that the [it] has utilized the *Johnson* framework as the basis for its analysis.'" *Moench v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 596 (5th Cir. 2016) (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642 (5th Cir. 2012)); *see also EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 473 (5th Cir. 2009).

Upon consideration of the *Johnson* factors, the Court finds that no adjustment to the lodestar figure is necessary. This civil action was a straightforward copyright infringement action. The issues involved were neither novel nor difficult. The litigation did not require any unique skill or expertise on the part of Mr. Liebowitz; nor did it require more than the usual investment of time or labor. Indeed, the default posture of this case indicates that it involved *less* than the usual time and labor for a copyright infringement case—Mr. Liebowitz expended only seven hours total in this matter. No trial was required. Mr. Liebowitz billed Verch on an hourly basis, and there is no evidence before the court that Verch imposed any time limitation on Mr. Liebowitz or that other circumstances made representing Verch undesirable. Mr. Liebowitz charged his

customary fee, which resulted in an award that is typical for this type of case.

Finally, the Court finds that, as a limited liability company, White Rock is neither a minor nor an incompetent person, nor can it be active in military service. Therefore, the District Court should GRANT Verch's Motion and enter default judgment in the amount of $6,500.00 against White Rock consistent with these Findings, Conclusions, and Recommendation. It should also GRANT Verch's request for attorney's fees and award Verch $3,415.00 in attorney's fees and costs.

**SIGNED** June 30, 2020.

---

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).